A95A2657. CHEM LAWN SERVICES et al. v. STEPHENS.
(469 SE2d 375)

ANDREWS, Judge.

We granted the application of Chem Lawn Services and its insurer for a discretionary appeal in this workers' compensation case.

After Stephens suffered a blow to his left knee while working for Chem Lawn on June 26, 1992, Chem Lawn voluntarily paid medical expenses and disability benefits without an award. Temporary total disability benefits were paid until February 3, 1993, when Stephens obtained a physician's release to return to normal work duties, and he returned to his regular work for Chem Lawn. Stephens continued to work for Chem Lawn until May 31, 1993, when he was unable to continue work because of gradually increasing pain in both knees, at which time he was terminated by Chem Lawn. After that date, Stephens sought additional medical treatment for his knee problems, and he eventually filed a claim on April 4, 1994, seeking temporary total disability from June 1, 1993, and also payment of contested medical expenses incurred after that date.

There was expert medical testimony at the hearing held on August 12, 1994, that, during treatment for the June 26, 1992 knee injury, Stephens was diagnosed as having a pre-existing disease in both knees known as osteochondritis dissecans (OD), the development of which was unrelated to a condition of his employment and which had developed over a long period prior to the June 26 accident. There was also a diagnosis of a possible fracture of the left knee from the June 26 accident. A surgical procedure was performed on Stephens' left knee in July 1992 during which the surgeon looked for any signs of

trauma or fracture to the knee caused by the June 26, 1992 injury and examined and treated the OD condition in that knee. No knee fracture was found. Based on his observations, the surgeon testified that the June 26, 1992 blow to the knee temporarily aggravated the pre-existing OD condition and that the aggravation caused by the June 26 accident would have likely resolved in three to six weeks. However, during rehabilitation from the surgery to the left knee, the resulting shift of weight to Stephens' right knee aggravated the pre-existing OD condition in his right knee. As a result, additional surgery was performed on Stephens' right knee in November 1992. After additional rehabilitation therapy, Stephens was released to return to his normal work duties on February 3, 1993. Accordingly, there was medical evidence that the aggravation of the pre-existing OD caused by the June 26, 1992 knee injury was resolved prior to Stephens' return to normal work duties in February 1993 and that Stephens' subsequent knee problems were caused by a progressive worsening of the pre-existing OD as a result of resuming normal work duties, rather than the June 26, 1992 injury to the knee.

The WC-14 form on which Stephens filed his claim stated that he was first disabled on June 26, 1992, and that he was seeking "temporary total disability from 6/1/93 until released to return to duty." Chem Lawn took the position that the June 26 accident caused a temporary aggravation of the pre-existing condition and that any temporary disability caused by the June 26 compensable accident had completely resolved by the time Stephens returned to normal work duties on February 3, 1993. At the hearing, the administrative law judge characterized the issue as whether there was a change in condition for the worse from the June 26, 1992 compensable injury. Based on evidence presented, the ALJ found that the compensable injury of June 26, 1992 was not the cause of the disability or medical expenses for which Stephens sought compensation in the present claim and that Stephens had failed to carry his burden of proving that he had experienced a change in condition for the worse from the prior compensable injury.

The appellate division of the Board accepted the findings of fact of the ALJ as supported by a preponderance of the competent and credible evidence. OCGA § 34-9-103 (a). The appellate division made additional findings of fact that, after Stephens returned to his regular work duties in February 1993, his normal work duties aggravated the OD condition to the extent that he became unable to work. The appellate division further found that, even though the June 26, 1992 knee injury only temporarily aggravated the pre-existing OD, "[w]hen employer/insurer accepted employee's claim [from the June 26, 1992 knee injury] as compensable and paid both income and medical benefits for treatment of the OD, employer/insurer accepted the OD as the

compensable injury. Therefore, the employer/insurer cannot now claim that it is not responsible for the treatment or disability caused by the OD condition which it has already accepted as compensable." The appellate division also found that Chem Lawn and its insurer "cannot now controvert the claim for the OD condition" because, "[w]here an employer/insurer has accepted a claim which is later discovered to be non-compensable, the employer/insurer's remedy is to controvert the claim on the grounds of newly discovered evidence [pursuant to] OCGA § 34-9-221 (h)." The appellate division concluded that Chem Lawn and its insurer were prohibited from controverting the claim for the OD condition because they failed to exercise due diligence, prior to voluntary payment of compensation for the OD condition, to discover that the employee's OD condition was not caused by the injury or that any aggravation of the OD condition caused by the prior knee injury was only temporary.

Based on these findings, the appellate division concluded that Stephens met his burden of proving a change in condition for the worse. The appellate division then noted that "even if the employee had only suffered a temporary aggravation of a pre-existing condition which resolved in February 1993 . . . the facts presented at [the] hearing could lead to a conclusion that [the] employee suffered a fictional new accident as of June 1, 1993, the date he was forced to cease work due to an aggravation of his pre-existing, unrelated OD condition." On appeal, the superior court affirmed the award of the appellate division.

Chem Lawn and its insurer claim it was error for the appellate division, as affirmed by the superior court, to conclude they were estopped from denying the compensability of the pre-existing OD on the basis that they paid for medical treatment and disability benefits related to the pre-existing condition. They claim benefits and treatment were provided as a result of the temporary aggravation of the pre-existing condition caused by the June 26 knee injury, and that there was no acceptance of a causal relationship between the June 26 accident and the pre-existing condition. We agree.

Based on evidence presented at the hearing, the ALJ found that the pre-existing condition was not caused by the June 26 accident, which had developed prior to Stephens' employment. The ALJ concluded that the June 26 accident temporarily aggravated the pre-existing condition resulting in a compensable injury for which Chem Lawn paid benefits until the temporary disability ceased, and Stephens returned to normal work duties on February 3, 1993. These findings were accepted by the appellate division as supported by a preponderance of the competent and credible evidence in the record. There is no basis for concluding that Chem Lawn accepted the pre-existing OD as the compensable injury. There was evidence that the

disability benefits and medical treatment Stephens received until the date he returned to normal work duties for Chem Lawn on February 3, 1993, resulted from the June 26 blow to the left knee. In the initial surgical procedure in July 1992, the surgeon looked for signs of a fracture or trauma to the knee resulting from the June 26 injury and also treated the OD. The second surgical procedure on the right knee in November 1992 was necessitated by the shift of weight to the right knee during rehabilitation from the first procedure. Stephens returned to normal work duties after rehabilitation from the second procedure. Accordingly, the diagnosis and treatment of Stephens' pre-existing OD, including both surgical procedures and continuing disability during rehabilitation, directly or indirectly resulted from and was part of the treatment for the June 26 accident. Just because Chem Lawn accepted the compensability of the June 26 accident and provided benefits and medical treatment which not only treated the temporary aggravation of the pre-existing condition caused by the June 26 accident, but also incidentally treated the pre-existing condition, this was not a basis for concluding that Chem Lawn accepted the compensability of the pre-existing condition, nor was it a basis for concluding that Chem Lawn was estopped from contesting the compensability of any subsequent disability allegedly resulting from the pre-existing condition.

The only issue heard and determined by the ALJ was whether or not Stephens was entitled to additional compensation for the June 26 accident because of a change in condition for the worse. Since the appellate division agreed that a preponderance of the competent and credible evidence supported the ALJ's finding that the aggravation of the pre-existing condition was a temporary disability which had resolved, it follows that the evidence did not support Stephens' claim that his present disability resulted from a change in condition for the worse from the June 26 accident. In other words, a change in condition claim for additional compensation under the original injury was not viable where, based on the factual determinations made by the ALJ, there was no causal connection between the original injury and the present disability. See *Slattery Assoc. v. Hufstetler*, 161 Ga. App. 389, 390-391 (288 SE2d 654) (1982). One element of establishing a change of condition claim upon resuming work after an initial injury is "that the inability to work was proximately caused by the previous accidental injury." ˙ ˙ ˌˑ ˙ *v. Ga. State Univ.*, 139 Ga. App. 212, 213 (228 SE2d 200) (1976). "[Where] the wear and tear of ordinary life or ordinary work [rather than a specific job-related incident] to some extent aggravates a pre-existing infirmity, *when that infirmity itself, stemming from the original trauma,* continues to worsen, the point where the employee is no longer able to continue his work is not a new accident but is a change of . . . condition entitling the claimant

to compensation under the original award." (Emphasis supplied and omitted.) *St. Paul Fire &c. Ins. Co. v. Hughes*, 125 Ga. App. 328, 330 (187 SE2d 551) (1972); see *Central State Hosp. v. James*, 147 Ga. App. 308, 309-310 (248 SE2d 678) (1978) (citing *Hughes*, supra, as authority for finding a change in condition rather than a new injury under these circumstances). Under such circumstances, additional compensation for a change in condition under the original injury is based on a causal connection existing between the original injury and the subsequent disability when the subsequent disability results from job-related deterioration of a condition which stemmed from the original injury. See *Holt's Bakery v. Hutchinson*, 177 Ga. App. 154, 158-159 (338 SE2d 742) (1985) (change in condition found because of causal connection between original injury and subsequent cessation of work due to gradual worsening of condition). In Stephens' claim, however, the ALJ's factual findings established that the OD condition pre-existed the original injury, and the continued existence of the OD condition in Stephens' knees after he returned to normal work duties was unrelated to the temporary aggravation caused by the original June 26 injury. Since the pre-existing OD did not stem from the original injury, any subsequent disability which may have resulted from aggravation of the OD by resumption of normal work duties would be a separate new injury without causal connection to the original injury. See *Leatherby Ins. Co. v. Hubbard*, 142 Ga. App. 476 (236 SE2d 168) (1977) (a completely resolved temporary aggravation of a pre-existing condition was not causally related to a subsequent claim based on the underlying condition).

The appellate division, as affirmed by the superior court, erred in applying the provisions of OCGA § 34-9-221 (h) and erred in concluding that Stephens had met his burden of proving a change in condition entitling him to additional compensation under the original June 26 injury.

Furthermore, we conclude the superior court erred by affirming the portion of the appellate division award which concluded the evidence supported a finding that Stephens incurred a new injury when he was unable to continue work after May 31, 1993. Since this issue was not heard or determined by the ALJ, Chem Lawn was not given notice and an opportunity to be heard and present a defense. See *Hart v. Owens-Illinois, Inc.*, 165 Ga. App. 681, 682 (302 SE2d 701) (1983). "Under the Workers' Compensation Act the employer is entitled to notice and an opportunity to be heard prior to being required to pay benefits. . . . See OCGA § 34-9-100." (Emphasis omitted.) *K-Mart Apparel Corp. v. Temples*, 260 Ga. 871, 872 (401 SE2d 5) (1991).

Although Stephens' WC-14 form did not technically set forth a claim that his disability beginning June 1, 1993, was the result of a

new injury on that date as opposed to a change in condition from the June 26, 1992 injury, it appears that an issue necessarily raised by the claim and the evidence presented at the hearing was whether or not Stephens experienced a new injury by aggravation of the pre-existing OD by resumption of his normal work duties. See *Colonial Stores v. Hambrick*, 176 Ga. App. 544 (336 SE2d 617) (1985). In the administration of the Workers' Compensation Act, technical niceties of pleading and procedure are not strictly followed, and the ALJ has full authority to hear and determine all questions with respect to a claim. OCGA § 34-9-100 (a); *Continental Ins. Co. v. McDaniel*, 118 Ga. App. 344, 345 (163 SE2d 923) (1968). Given the nature of the claim and the evidence presented, the issue was sufficiently presented such that it could have been heard and determined by the ALJ. See Board Rule 102 (c). Since the Workers' Compensation Act is to be liberally interpreted to carry out its purpose of providing relief to injured employees while protecting employers from excessive damage awards (*Samuel v. Baitcher*, 247 Ga. 71, 73 (274 SE2d 327) (1981)), we reverse the decision of the superior court and remand with directions that the case be recommitted to the Board of Workers' Compensation for a hearing in accordance with this opinion to address the issue of whether Stephens incurred a compensable new injury rather than a change in condition.

*Judgment reversed and case remanded with directions. McMurray, P. J., and Blackburn, J., concur.*

DECIDED FEBRUARY 19, 1996 —

Drew, Eckl & Farnham, Ann Bishop-Byars, Frederick L. Hubbs, Jr., for appellants.
Bates & Baum, Beverly B. Bates, for appellee.