A01A0987. HOLLIDAY v. JACKY JONES LINCOLN-MERCURY et al.
(554 SE2d 286)

RUFFIN, Judge.

Richard Holliday appeals from the superior court's order reversing his award of permanent partial disability benefits in this workers' compensation case. For reasons that follow, we affirm and remand with direction.

The record shows that Holliday injured his back while working as a lube technician at Jacky Jones Lincoln-Mercury, the employer/self-insurer ("Jones"). Jones referred Holliday to an orthopedist shortly after his injury and paid for several visits with that physician, as well as other doctors. When the orthopedist concluded that Holliday had recovered from his work injury, however, Jones refused to pay for further treatment.

Holliday subsequently filed a claim with the State Board of Workers' Compensation, seeking temporary total disability benefits and requesting a hearing.[1] At the hearing, the administrative law judge ("ALJ") framed the issue presented as follows: "Is the Claimant disabled and entitled to disability benefits and in what amount,

---

[10] *Robbins v. State,* 193 Ga. App. 5, 6 (387 SE2d 18) (1989).
[1] The record does not include the portion of the Form WC-14 that specified the benefits Holliday sought. Both parties make clear on appeal, however, that Holliday requested only temporary total disability benefits.

whether it's temporary total or temporary partial or any at all after he last worked." Neither party objected to the ALJ's characterization of the issue.

During the hearing, Jones asserted that Holliday had recovered from the work-related injury and presented medical evidence that Holliday had "reached his maximum medical improvement." Holliday offered competing medical evidence. In particular, he introduced a report from Dr. Joseph Saba, who independently evaluated Holliday at the request of Holliday's counsel. Saba concluded that, although Holliday had reached maximum medical recovery, he had "a 10% permanent partial impairment of the whole man which [was] solely related to [the work] injury."

The ALJ found that Holliday had sustained a work-related injury that continued to limit him physically, but denied Holliday's claim for temporary total disability benefits under OCGA § 34-9-261.[2] Based on Dr. Saba's report, however, the ALJ determined that Holliday had a ten percent permanent disability rating, entitling him to benefits under OCGA § 34-9-263.

Jones appealed, challenging the permanent impairment ruling.[3] Specifically, Jones claimed it had no notice that permanent partial disability benefits were under consideration, and thus it had not been given an opportunity to be heard on the issue. The appellate division disagreed and affirmed the award, concluding that

> [i]t was not error for the administrative law judge to make findings regarding [Holliday's] entitlement to permanent partial disability benefits inasmuch as it was agreed to by the parties at the call of the case that the issue of [Holliday's] entitlement to "any type of benefits at all after he last worked" would be within the scope of the hearing. Furthermore, the evidence which was introduced dealing with the degree of permanent partial disability was not objected to by either party.

Jones appealed to the superior court, again challenging the permanent partial disability award. The superior court reversed, finding that the ALJ improperly considered permanent partial disability benefits without notice to Jones. At Holliday's request, we granted discretionary review of the superior court's ruling.

---

[2] In denying temporary total disability benefits, the ALJ found that Holliday failed to establish that his disability prevented him from working.

[3] In addition to awarding permanent partial disability benefits, the ALJ directed Jones to pay for Holliday's treatment by Dr. Gilbert S. Chandler, a physician to whom Holliday was referred by his authorized treating physician. Jones did not appeal this portion of the ALJ's award.

1. " 'Under the Workers' Compensation Act the employer is entitled to notice and an opportunity to be heard prior to being required to pay benefits.' "[4] In this case, we agree with the superior court that Jones was not afforded notice or an opportunity to be heard on the issue of permanent partial disability.

As noted above, Holliday originally requested only temporary total disability benefits, and the record contains no evidence that Holliday raised the issue of permanent disability benefits prior to the workers' compensation hearing. At that hearing, the ALJ framed the issue for the parties, but did not mention permanent partial disability benefits. Instead, the ALJ explained that the issue involved whether Holliday was "entitled to disability benefits and in what amount, whether it's temporary total or temporary partial or any at all."

The appellate division concluded that the ALJ's reference to "any [benefits] at all" put Jones on notice that permanent partial disability benefits were under consideration. We disagree. Without dispute, Holliday focused on temporary income benefits prior to the workers' compensation hearing. The ALJ's description of the issue to be tried, which referenced only temporary benefits, did not alter that focus. Thus, Jones could have reasonably concluded that the only issue to be addressed at the hearing was whether Holliday was entitled to temporary income benefits or *no* benefits at all.[5] Jones argued the latter, asserting that Holliday should not be awarded benefits because he had recovered from his work-related injury. Under these circumstances, we cannot conclude that the ALJ's statement gave Jones sufficient notice that permanent partial disability benefits were at issue and might be included in any award.[6]

On appeal, Holliday argues that Jones implicitly agreed to liti-

---

[4] *Chem Lawn Svcs. v. Stephens*, 220 Ga. App. 239, 243 (469 SE2d 375) (1996).

[5] In affirming the ALJ's award, the appellate division found that the parties agreed at the hearing "that the issue of [Holliday's] entitlement to 'any type of benefits at all after he last worked' would be within the scope of the hearing." The quote apparently attributed to the ALJ — "any type of benefits at all after he last worked" — is inaccurate and makes the ALJ's statement appear all-encompassing. When viewed in context, the ALJ's actual statement did not clearly place permanent partial disability benefits in issue.

[6] *Chem Lawn*, supra ("Since this issue was not heard or determined by the ALJ, Chem Lawn was not given notice and an opportunity to be heard and present a defense."); see also *Coweta County v. Simmons*, 269 Ga. 694 (507 SE2d 440) (1998) ("There having been no notice to [the defendant] that the [court] might consider the merits of the issue of his alleged negligence, a holding that he was liable, tantamount to an award of summary judgment against him, would deny him due process."); *King v. Hawkins*, 265 Ga. 93 (454 SE2d 135) (1995) (judgment granting habeas corpus petition reversed because defendant had no notice that issue not raised in petition would be litigated or considered by habeas court); *Childers v. Monson*, 241 Ga. App. 70, 71 (524 SE2d 326) (1999) (noting that if defendant had been properly apprised of claim plaintiff attempted to raise at the close of evidence, "he might have defended the case differently").

gate the permanent partial disability issue by failing to object to Dr. Saba's report, which assigned a ten percent permanent partial disability rating.[7] Citing OCGA § 9-11-15 (b), he claims that this evidence of permanent disability amended the relief originally requested in his WC-14 form. Assuming, without deciding, that OCGA § 9-11-15 applies in workers' compensation cases, we find no merit in Holliday's argument.

Under OCGA § 9-11-15 (b), "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Implied consent may be found when a party fails to object to evidence relating to a new issue.[8] Such consent does not arise, however, "if the parties do not squarely recognize [the new issue] as an issue in the trial."[9] Furthermore, "[w]here a party does not object to evidence because it is relevant to an issue made by the pleadings, and there is no evidence the party offering such evidence was seeking to amend the pleadings, a non-objecting party can scarcely be held to have given him implied consent to trial of unpled issues."[10]

Dr. Saba's five-page report contains one reference to Holliday's permanent partial disability rating. The remainder of the report provides Dr. Saba's opinions about Holliday's condition and ability to work, evidence certainly relevant to the temporary total disability issue specifically addressed at the hearing. Thus, Jones' consent to trying the permanent partial disability issue "will not be implied absent a clear indication [Holliday] was attempting to raise [this] issue" by introducing Saba's report.[11]

No such "clear indication" appears in this case. Holliday submitted the Saba report with 11 other exhibits, making no reference to the permanent partial disability rating. Moreover, Holliday has pointed to no evidence that the parties or the ALJ ever mentioned permanent partial disability benefits or any amendment to the WC-14 form at the hearing. We cannot conclude that Jones implicitly consented to an amendment and trial on whether Holliday had suffered a permanent partial disability.[12] Accordingly, the ALJ erred as a mat-

---

[7] The appellate division apparently agreed with this argument, noting in its order that neither party objected at the hearing to evidence relating to the degree of Holliday's permanent partial disability.

[8] *Southern Discount Co. v. Kirkland*, 181 Ga. App. 263, 267 (3) (351 SE2d 685) (1986); *Carreras v. Austell Box Bd. Corp.*, 154 Ga. App. 135, 137 (2) (267 SE2d 792) (1980).

[9] *Southern Discount Co.*, supra.

[10] Id.

[11] Id.

[12] No *express* consent to try the permanent partial disability issue can be found in Jones' failure to object to the ALJ's statement of the issue at the beginning of the workers' compensation hearing. As discussed above, the issue described by the ALJ did not put Jones on notice that permanent partial disability benefits were under consideration.

ter of law in addressing those benefits, and the superior court properly reversed the permanent partial disability award.[13]

2. Nevertheless, we recognize that Dr. Saba's report did, in fact, address permanent partial disability. Furthermore, although Holliday's WC-14 form apparently did not request permanent partial disability benefits, "[i]n the administration of the Workers' Compensation Act, technical niceties of pleading and procedure are not strictly followed, and the ALJ has full authority to hear and determine all questions with respect to a claim."[14]

The Workers' Compensation Act must be interpreted liberally to provide relief to injured employees and protect employers against excessive damages awards.[15] Construing the Act in this manner, we find that the evidence sufficiently raised the issue of permanent partial disability such that, had the parties been given sufficient notice, the ALJ could have properly addressed the issue. Accordingly, we affirm the superior court's finding of inadequate notice to Jones, but remand with direction that the case be recommitted to the Board of Workers' Compensation for a hearing on the issue of whether Holliday is entitled to recover permanent partial disability benefits under OCGA § 34-9-263.[16]

*Judgment affirmed and case remanded with direction. Johnson, P. J., and Ellington, J., concur.*

DECIDED AUGUST 22, 2001 —
RECONSIDERATION DENIED SEPTEMBER 12, 2001.

*Jean W. Levy*, for appellant.
*Murphy & Sibley, R. Napier Murphy*, for appellees.

---

[13] See *Hart v. Owens-Illinois, Inc.*, 165 Ga. App. 681, 683 (302 SE2d 701) (1983); see also *Lavine v. American Ins. Co.*, 179 Ga. App. 898, 900 (348 SE2d 114) (1986) (superior court may reverse an award by the Workers' Compensation Board if errors of law were committed).

[14] *Chem Lawn*, supra at 244.

[15] Id.

[16] See id.