**THIRD DIVISION**
**DOYLE, P. J.,**
**GOBEIL, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 27, 2023**

# In the Court of Appeals of Georgia

A23A0989. STATE OF GEORGIA v. CHAPMAN.

GOBEIL, Judge.

In this workers' compensation case, Stephen Chapman sustained an on-the-job injury to his left knee in 2018 while working as a correctional officer at Ware State Prison. In 2021, he sought benefits for injuries to his right ankle and right knee, arguing that these injuries constituted compensable "superadded injuries," stemming from the left knee condition. The administrative law judge ("ALJ") denied the compensability of the injuries, and further found that Chapman's left knee injury had resolved to its preexisting, baseline condition. The Appellate Division of the State Board of Workers' Compensation affirmed the ALJ's award. The superior court vacated the award, concluding that the ongoing compensability of Chapman's left

knee injury was not properly before the ALJ. On appeal, the Employer[1] argues that

the superior court erred by concluding that the Board violated Chapman's rights to

notice and due process and by making its own findings of fact, some of which were

based on evidence not in the record. Although we affirm the superior court's order

as it pertains to notice, we conclude that the superior court should have remanded the

case to the Board for a further evidentiary hearing.

> In reviewing a workers' compensation award, this Court must construe the evidence in the light most favorable to the party prevailing before the appellate division. In addition, the findings of the Board, when supported by any evidence, are conclusive and binding, and neither the superior court nor this Court may substitute itself as a factfinding body in lieu of the State Board. But erroneous applications of law to undisputed facts, as well as decisions based on erroneous theories of law, are subject to a de novo standard of review.

*Cho v. Mountain Sweet Water, Inc.*, 322 Ga. App. 400, 400 (745 SE2d 663) (2013)

(citation and punctuation omitted).

---

[1] The appellants in this case are the State of Georgia, Ware State Prison, and the Georgia Department of Administrative Services; we refer to them collectively as the "Employer."

An employee sustains a compensable superadded injury when, as a result of a work-related disability to one part of the body, the employee suffers a disabling injury to another part of the body. Such superadded injuries are generally considered compensable because they constitute either a change in the employee's condition or a new accident.

*Baugh-Carroll v. Hosp. Auth. of Randolph County*, 248 Ga. App. 591, 595 (2) (545 SE2d 690) (2001) (citations omitted).

Viewed favorably to the Board's decision, the relevant facts show that Chapman was employed as a correctional officer at the Ware State Prison. On August 22, 2018, Chapman sustained injuries when a prisoner he was helping to restrain fell on Chapman's left knee. The Employer accepted the left knee injury as compensable. Chapman's authorized treating physician, J. Kevin Brooks, M.D., provided him with a knee brace and Chapman returned to work. Chapman's knee injury continued to cause him pain, and Dr. Brooks prescribed cortisone shots and medication. Although Chapman continued working full duty, his left knee condition did not improve, and he underwent surgery in January 2020 to repair a medial meniscus and lateral meniscus tear. He remained out of work until April 1, 2020, when he again returned to full duty work, including working additional hours due to COVID-19-related staffing shortages.

On April 13, 2020, while walking toward a barn on his property, Chapman fell. Chapman attributed the fall to his left knee "collaps[ing] or buckl[ing]." As a result, he suffered a broken right ankle and his left knee began hurting again. Chapman was out of work for a week. He had surgery on his right ankle on May 11, 2020, and has not returned to work. The Employer re-commenced payment of income benefits in April 2020.

In June 2020, Dr. Brooks recommended additional injections for Chapman's left knee.[2] Then, in January 2021, Chapman began experiencing pain in his right knee, which he linked to his altered gait and overcompensating for the left knee pain. Dr. Brooks diagnosed Chapman with tendonitis in his right knee.

After Chapman sought workers' compensation benefits for his right ankle and right knee injuries as superadded injuries caused by his compensable left knee condition, the Employer controverted these injuries as unrelated to the original on-the-job injury. The parties proceeded to a hearing. At the outset of the hearing, the ALJ stated the issues as follows:

---

[2] The Employer declined to approve these injections initially, but ultimately authorized the injections in September 2021.

> We're here at [Chapman's] request to determine whether he is entitled to payment of certain medical expenses. He's specifically saying that he has had super-added injuries to his right ankle and right knee injury. . . . Also at issue is whether Mr. Chapman is entitled to payment of certain mileage expenses and medical bills and assessed attorney's fees.

The parties agreed with the ALJ's statement of the issues to be tried, and the ALJ noted that Chapman bore the burden of proof.

In his written award, the ALJ found that the medical evidence showed that Chapman had recovered from his left knee injury before the April 2020 fall at his home. Specifically, the ALJ noted that Chapman testified that after the 2020 arthroscopic repair on his left knee, he was able to return to his regular job, working shifts for as long as 15 hours; that after the incident with the inmate, the medical records show that Chapman sustained a new and extended tear to the medial meniscus, which was a compensable injury; and that after Chapman's left knee surgery in January 2020, he could successfully do medial and lateral movements and deep flexion, and there was no mention of any weakness. In arriving at his decision, the ALJ relied in large part on the report from Chapman's May 2021 independent medical examination ("IME"), in which Mark Kamelson, M. D., opined:

Mr. Chapman's current left knee . . . condition is left knee osteoarthritis. . . . Mr. Chapman has returned to his pre-August 22nd 2018 state. He has returned to his baseline. He had underlying arthritis prior to this and he currently has arthritis. . . . There is no further treatment that is necessary for Mr. Chapman's August 22, 2018 injury. . . . Mr. Chapman has reached [maximum medical improvement] for his August 22, 2018 on-the-job injury.

The ALJ concluded that Chapman's right ankle and subsequent right knee injuries were not superadded injuries related to the compensable left knee injury, with the result that the Employer was not liable to pay additional benefits.[3] On the basis of the ALJ's finding that Chapman had undergone a change in condition for the better, on February 9, 2022 (shortly after the ALJ issued his award), the Employer controverted further medical treatment and indemnity benefits for the left knee based on the ALJ's conclusion that Chapman had returned to his baseline condition.

Chapman appealed to the Appellate Division, arguing in pertinent part that the ALJ erred in finding that he underwent a change in condition for the better with regard to his left knee because that issue was not before the ALJ, and consequently, he was deprived of proper notice and an opportunity to be heard on that issue. The

---

[3] The ALJ also denied Chapman's requests for reimbursement for mileage and assessed attorney fees.

Appellate Division rejected Chapman's argument, finding that Chapman himself raised the issue of the compensability of his left knee by asserting that the weakened condition of that knee caused him to fall, resulting in the subsequent injuries to his lower right extremity. The Appellate Division also affirmed the ALJ's factual findings and conclusions that Chapman's left knee had returned to its preexisting baseline condition prior to the April 2020 fall at home, thereby precluding causation as to an alleged superadded injury.

Chapman then appealed to superior court, arguing that the Board acted without or in excess of its power, that there was insufficient evidence to support the award, and that it was contrary to law. The superior court found that the hearing before the ALJ was conducted only on the issue of designating injuries to Chapman's right knee and right ankle as superadded injuries. The court ruled:

> The [ALJ] not only denied these injuries superadded status, but further found that the original work-related injury to the left knee had returned to its preexisting baseline condition and was no longer compensable. . . . Neither [Chapman], [the Employer], nor the [ALJ] moved to consider whether [Chapman's] left knee had returned to its preexisting baseline condition.

In addition, the court went on to find that OCGA § 34-9-221 required the Employer to file a Board Form WC-3 if it wished to contravene a claimed compensable injury, and it had not done so. Consequently, it concluded that Chapman's rights to notice and due process were violated because he did not have notice that the issue of the continuing compensability of the underlying work-related injury would be adjudicated at the hearing. Accordingly, the superior court vacated the ALJ's award, as affirmed by the Appellate Division, and remanded for entry of a new order consistent with the terms of its order. We granted the Employer's application for discretionary review, and the instant appeal followed.

1. The Employer first argues that the superior court erred by concluding that Chapman's due process rights were violated when the ALJ made factual findings on an issue that was not properly before it, and which Chapman was not aware would be addressed in the proceeding. We disagree.

"[I]n order for an issue to be determined at a hearing, a party must either have notice and an opportunity to be heard on the issue *or* have given express or implied consent for the issue to be heard." *Harris v. Eastman Youth Dev. Center*, 315 Ga. App. 643, 645 (1) (727 SE2d 254) (2012) (citation and punctuation omitted; emphasis in original). The Employer contends that Chapman impliedly consented to trying the

8

issue of the compensability of his left knee by attributing the new right leg injuries to the weakened condition of his left knee. However, "implied consent [to try a particular issue] does not arise if the parties do not squarely recognize the new issue as an issue in the trial." Id. at 646 (1) (citation and punctuation omitted).

We first note that the hearing before the ALJ was not an "all issues" hearing, in which an employee "is initially seeking compensation for a work-related injury[.]" *Tara Foods v. Johnson*, 297 Ga. App. 16, 18 (676 SE2d 418) (2009). Here, Chapman's Board Form WC-14 (request for hearing) did not mention the compensability of the left knee as an issue for determination, the WC-14 was not amended or supplemented to include this issue, and neither the Employer, Chapman, nor the ALJ mentioned the ongoing compensability of the left knee as an issue for trial. As discussed above, the ALJ framed the issues to be tried at the hearing as Chapman's request for designation of his right leg injuries as compensable superadded injuries, reimbursement for mileage, and attorney fees. The ALJ also

noted that Chapman had the burden of proving his entitlement to benefits.[4] Similarly, when cross-examining Chapman at the hearing, the following exchange took place:

> [EMPLOYER'S COUNSEL]: [The Employer] ha[s] provided treatment for that left knee under Workers' Comp.; correct?
> [CHAPMAN]: Yes, ma'am.
> [EMPLOYER'S COUNSEL]: And then since then[,] you've developed pain in your right knee and right ankle, and [those are] the issues we're here about; correct?
> [CHAPMAN]: Yes, ma'am.

Questioning at the hearing focused on conflicting medical reports concerning whether Chapman's fall was a result of tripping, or his left knee buckling and giving way. Additionally, in their respective post-hearing briefs to the ALJ, neither party raised the issue of the ongoing compensability of the left knee, but instead confined their arguments to whether the right ankle and knee injuries could be linked to the original left knee injury.

Moreover, as discussed above, shortly after the ALJ issued his award, the Employer controverted further medical treatment and indemnity benefits for the left

---

[4] See *Maloney v. Gordon County Farms*, 265 Ga. 825, 826 n. 2 (462 SE2d 606) (1995) ("The burden of proof is on the party seeking the change. Thus, when a modification of a final award is sought based on a change in condition for the better, the burden is on the employer or insurer.").

knee based on the ALJ's conclusion that Chapman had undergone a change in condition for the better and returned to his baseline condition. However, had the hearing in fact been one for change in condition for the better, the Employer, rather than Chapman, would have borne the burden of proof. *Maloney*, 265 Ga. at 826 n. 2. But as noted above, the ALJ assigned the burden of proof to Chapman, providing further support for our conclusion that the hearing was limited to the issue of superadded injuries to Chapman's right leg. The Employer maintains that the ALJ had authority to propose a change of condition "on its own motion." OCGA § 34-9-104 (b) ("The board on its own motion may propose . . . under this Code Section for another decision because of a change in condition ending, decreasing, increasing, or authorizing the recovery of income benefits awarded or ordered in the prior final decision[.]"). However, that subsection does not dispense with the requirement that parties be afforded notice that the ALJ intends to consider a change in condition at the hearing. See generally *Cobb County School Dist. v. Barker*, 271 Ga. 35, 37 (2) (518 SE2d 126) (1999) ("The principles of due process extend to every proceeding judicial or administrative or executive in its nature at which a party may be deprived of life, liberty, or property[,]" including workers' compensation proceedings.") (citation and punctuation omitted).

11

Under these circumstances, we agree with the superior court that Chapman's due process rights were violated when the ALJ made a determination as to the compensability of the left knee injury when that issue was not properly before the ALJ. "And because there is no evidence that [Chapman] had notice and an opportunity to be heard on the issue of compensability, or gave implied consent to trial of that issue, the ALJ erred as a matter of law in making factual findings on that issue." *Harris*, 315 Ga. App. at 646-647 (1) (citation and punctuation omitted) (vacating ALJ award and remanding case because issue of whether employee's low-back pain was compensable was not an issue before ALJ on employee's request for catastrophic designation of her claim based on knee and low-back pain); *Home Depot v. Pettigrew*, 298 Ga. App. 501, 503-504 (1) (680 SE2d 450) (2009) (concluding that ALJ erred as a matter of law by making factual findings regarding employee's superadded back injury where there was no evidence that employee "had notice and an opportunity to be heard on the issue of compensability, or gave implied consent to trial of that issue").

Nevertheless, although Chapman did not expressly or impliedly consent to the condition of his left knee being tried at the hearing, we are mindful that "[i]n the administration of the Workers' Compensation Act, technical niceties of pleading and

12

procedure are not strictly followed, and the ALJ has full authority to hear and determine all questions with respect to a claim." *Chem Lawn Svcs. v. Stephens*, 220 Ga. App. 239, 244 (469 SE2d 375) (1996). And here, given the nature of the claim for superadded injuries and the evidence presented at the hearing, including the IME report, "the issue [of the compensability of Chapman's left knee injury] was sufficiently presented such that it could have been heard and determined by the ALJ" if Chapman had had adequate notice. Id.

Under such circumstances, "the appropriate procedure is to remand to the State Board of Workers' Compensation for a hearing on the issue of whether the [left knee] injury [remains] a compensable injury for purposes of the Workers' Compensation statute." *Home Depot*, 298 Ga. App. at 505 (2). Accordingly, we vacate the superior court's order and remand "with instruction that the case be recommitted to the State Board of Workers' Compensation for a further evidentiary hearing." Id. See also *Holliday v. Jacky Jones Lincoln-Mercury*, 251 Ga. App. 493, 496-497 (2) (554 SE2d 286) (2001) (remand required to determine employee's entitlement to permanent partial disability ("PPD") benefits where the evidence sufficiently raised the issue of PPD such that, had the parties been given sufficient notice, the ALJ could have properly addressed the issue).

2. In light of our decision to remand the case as set forth in Division 1, supra, we need not address the Employer's second claim of error.

*Judgment vacated and case remanded with direction. Doyle, P. J., and Senior Judge C. Andrew Fuller concur.*